IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| TREMAR HARRIS, | |
| Plaintiff | |
| v. | Case Number: 2:24-CV-56-LGW-BWC |
| DAYDAN BRANNON, individually; CANNON MCLEOD, individually; and ANSLEY FENNELL, individually, | |
| Defendants | |

**DEFENDANTS' PARTIAL MOTION TO DISMISS**

COME NOW Daydan Brannon, Cannon McLeod, and Ansley Fennell, in their respective individual capacities, and pursuant to Fed. R. Civ. P. 12 move the Court to dismiss Plaintiff's 42 U.S.C. §1983 claim against them for failure to intervene on January 29, 2022, as well as Plaintiff's claim under Georgia law for intentional infliction of emotional distress. In support of this motion, Defendants show the following:

**Introduction and Statement of Facts**

Plaintiff Tremar Harris alleges that Defendants, who were working as jailers at the Jeff Davis County Jail, failed to intervene during two uses of force by non-party jailer William Rentz. During one use of force, Rentz placed a chain around Harris's neck while Harris was restrained in a chair. Dkt. 1, ¶ 13. The second alleged use of force involved the use of a "shock shield" by Rentz against Harris. Dkt. 1, ¶ 21. Defendants are alleged to have been present for both of these incidents, but are not alleged to have personally participated in either use of force.

The use of force involving the chain around Harris's neck was recorded on the jail's surveillance video system.[1] That footage shows – and the allegations of Harris's Complaint confirm – that non-party jailer Rentz was the sole person to apply force to Harris, and that the use of force lasted for no more than four seconds.[2] Harris fails to state a claim for failure to intervene under 42 U.S.C. §1983 with respect to this incident because the short duration of the use of force did not provide any Defendant with sufficient time to intervene. Harris's conclusory allegation to the contrary – that Defendants "had the ability and time to prevent" the use of force – is incorrect as a matter of law. Dkt. 1, ¶ 17. Harris's claim that Defendants violated his rights by failing to report the use of force by Rentz after the fact likewise does not enjoy legal support. Finally, qualified immunity would bar Harris's claims arising from the strangulation incident even if Harris had otherwise stated a claim under §1983 against any of these Defendants; the law at the time of the incident did not clearly establish that failure to intervene in a four-second use of force, or to report a use of force of any nature, amounts to a constitutional violation.

---

[1] A copy of the footage has been incorporated into the Complaint by Harris. Dkt. 1-1, p. 8 (placeholder exhibit); Dkt. 4 (notice of manual filing). Out of an abundance of caution, and to ensure that the record contains a complete and accurate copy of the footage at issue, Defendants are likewise filing a copy of the footage as an exhibit to this motion.

[2] Because the video is available in the record and contains essentially all of the information relevant to this motion, Defendants will not burden the Court with a redundant narration of the video's contents. The chronology provided by Harris in the Complaint is generally accurate. Dkt. 1, ¶¶ 9-14.

Harris also pleads a claim under Georgia law for intentional infliction of emotional distress. To the extent that this claim is premised on the strangulation incident, it, too, fails with respect to these Defendants. The alleged conduct of Defendants in failing to intervene in a four-second use of force, which is not unconstitutional, is not sufficiently "extreme and outrageous" to support a claim for intentional infliction of emotional distress under state law. Dismissal of the portion of Harris's claims arising from the strangulation incident is warranted.

### Standard of Review

Where a defendant challenges a complaint for failing to adequately state a claim upon which relief can be granted, the court should apply a "two-pronged approach" in analyzing the complaint. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). First, the court should "eliminate any allegations in the complaint that are merely legal conclusions." *Id.* This first prong excludes "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Second, the court should assume that all well-pleaded factual allegations are true "and then determine whether [those allegations] plausibly give rise to an entitlement to relief." *Am. Dental Ass'n*, 605 F.3d at 1290. In determining plausibility, the court should "draw on its experience and common sense." *Iqbal*, 556 U.S at 663. Moreover, it is proper for the court to infer "'obvious alternative explanation[s]' which suggest lawful conduct rather than the unlawful conduct the plaintiff[s] would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal* and relying on *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Ultimately, if the plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 1289 (quoting *Twombly*, 550 U.S. at 570).

## Argument and Citation to Legal Authority

I. ***Plaintiff's 42 U.S.C. §1983 claim for failure to intervene during a four-second incident of strangulation fails.***

    *A.    Failure to intervene in a four-second use of force is not actionable.*

"The law of [the Eleventh] circuit is that an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007) (citation and punctuation omitted). In order to state a claim for failure to intervene, a plaintiff must establish that the defendant officer was "(1) in a position to intervene in an ongoing constitutional violation and (2) failed to do so." *Williams v. Radford*, 64 F.4th 1185, 1199 (11th Cir. 2023). Where the use of force in question is of a short duration, an officer is "not in a position to intervene" unless he had "forewarning" that the use of force was about to occur. *Grimes v. Felder,* 747 F. App'x 752, 753 (11th Cir. 2018) (holding that officer "had no forewarning that [fellow officer] would hit [inmate] a second time" when officer had just witnessed fellow officer striking inmate approximately two seconds prior).

To state a claim that an officer failed to intervene *during* an improper use of force, a plaintiff must allege that the use of force "went on for a sufficiently long period of time, that [other officers present] could and should have intervened." *Ruble v. King*, 911 F. Supp.

1544, 1556 (N.D. Ga. 1995). Sister courts in the Eleventh Circuit, and other appellate courts, have repeatedly and consistently held that a use of force that takes place in a matter of seconds does not meet this requirement. *See, e.g., Crowley v. Scott*, No. 5:14-CV-326 (MTT), 2016 WL 2993174, at *10 (M.D. Ga. May 23, 2016) (holding that the "suddenness and quickness" of a takedown that lasted "less than five seconds" gave bystander officer "no realistic opportunity to prevent" the use of force) (punctuation omitted); *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (holding that ten-second use of force did not give bystander officers the "opportunity and means" to intervene, and that plaintiff "failed to demonstrate that the incident lasted long enough for [the officers] to both perceive what was going on and intercede to stop it.); *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988) (holding that "three blows [] struck in [] rapid succession" by two separate officers gave bystander officer "no realistic opportunity to attempt to prevent them," and that episode was "not [] of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator."). *Cf. Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 925 (11th Cir. 2000) (holding that material issue of fact existed on claim for failure to intervene where one officer stated that use of force lasted for "only 5 or 10 seconds," but officer who allegedly failed to intervene testified that use of force may have continued for as long as two minutes).

    Here, Harris alleges – and video evidence confirms – that the use of force by Rentz lasted for no more than four seconds. Dkt. 1, ¶ 13. Harris does *not* allege, even in conclusory fashion, that any Defendant knew or should have known that Rentz would

attempt to strangle Harris. And in any event, the Complaint is devoid of any factual allegations that would allow Harris to make a showing that Defendants had "forewarning" of Rentz's actions. Absent sufficient allegations to state a claim that Defendants had a duty to intervene to prevent the use of force before it began, Harris is constrained to argue that such a duty arose while the use of force was underway.

But "[federal] courts have been unwilling to impose a duty to intervene where [] an entire incident unfolds in a matter of seconds." *Ontha v. Rutherford Cnty., Tennessee*, 222 F. App'x 498, 506 (6th Cir. 2007) (collecting additional cases). What the video of the incident shows, ample persuasive authority confirms: the four-second duration of the use of force at issue did not give Defendants enough time "to both perceive what was going on and intercede to stop it." *Burgess,* 735 F.3d at 475. Although Harris alleges in conclusory fashion that Defendants "had the ability, opportunity, skill and time to prevent and immediately stop Defendant Rentz from strangling the Plaintiff," there are no *factual* allegations in the Complaint to support this statement – and the analysis employed by the courts that have examined this issue effectively forecloses the possibility that such a showing could be made. Harris's allegation that Defendants were present during a four-second use of force is insufficient to state a claim for failure to intervene, and Harris's 42 U.S.C. §1983 claim is due to be dismissed to the extent that it is premised on the January 29, 2022 strangulation incident.

B.      *Failure to report a use of force is not actionable.*

As a sister court recently noted, there is no "legal authority that would support [a] claim that [an inmate] has a constitutional or federal right that [is] violated by [officers'] failure to report" an assault on the inmate by another officer. *Riley v. Billy,* No. CV 21-00203-JB-B, 2021 WL 4851891, at *4 (S.D. Ala. July 15, 2021), report and recommendation adopted, No. CV 21-00203-JB-B, 2021 WL 4847433 (S.D. Ala. Oct. 18, 2021). *See also Washington v. Dyas,* No. 5:23-CV-123-TKW-MJF, 2024 WL 1364745, at *4 (N.D. Fla. Mar. 5, 2024), report and recommendation adopted, No. 5:23-CV-123-TKW-MJF, 2024 WL 1348390 (N.D. Fla. Mar. 29, 2024) (dismissing claim for failure to intervene at pleadings stage where inmate "allege[d] no facts indicating that [officers'] failure to report the force after-the-fact posed an unreasonable risk of serious damage to his future health or safety.") (punctuation omitted, alteration adopted). While it is a *criminal* offense to fail to report a felony, that crime includes an element of concealment or participation, and in any event does not give rise to a private right of action. *Id.,* citing *U.S. v. Weekley,* 184 Fed. Appx. 903, 903-04 (11th Cir. 2006). To the extent that allegations that officers failed to report excessive force by other law-enforcement personnel have any relevance to claims under 42 U.S.C. §1983, it is only with respect to claims against governmental entities. *See, e.g., Blanchard v. City of Birmingham*, No. CV-10-BE-2250-S, 2013 WL 169285, at *3 (N.D. Ala. Jan. 15, 2013) (analyzing whether allegations that officers failed to report uses of excessive force by their colleagues were sufficient to state claim against municipality for unconstitutional custom or practice).

Harris alleges that Defendants had a "duty to intervene, prevent *and report* Defendant Rentz's unlawful actions." Dkt. 1, ¶ 18 (emphasis supplied). This is the only mention of a duty to report in the Complaint; there are no allegations, for example, that reporting of such incidents was required by law or by policy, and no clarification about what the allegedly required report would have entailed. Even if Harris had included sufficient factual information to flesh out a claim for failure to report, however, that claim would fail as a matter of law. To the extent that courts in the Eleventh Circuit have discussed a duty for officers to report excessive force by their colleagues, they have done so only in two contexts: where a failure to report is alleged to have created a risk of future harm, or in connection with *Monell* claims against governmental entities. Here, all of the Defendants are sued in their individual capacities, and Harris offers no allegations that any failure by Defendants to report Rentz's conduct after the fact resulted in further harm to him (or any risk thereof). To the extent that a claim for failure to report is generally cognizable – and it is not at all clear that this is the case – Harris's allegations fall far short of pleading one, and dismissal is warranted.

    C.    *Defendants are entitled to qualified immunity.*

"The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Wood v. Moss*, 572 U.S. 744, 757, 134 S. Ct. 2056, 2066–67, 188 L. Ed. 2d 1039 (2014), quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179

L. Ed. 2d 1149 (2011). A plaintiff generally cannot meet this requirement unless he can point to previous case law holding that the specific conduct at issue is unlawful. *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) (citations and some quotation marks omitted). At the pleadings stage, the burden is on a plaintiff who may face qualified immunity to plead "sufficient factual matter" to show that a clearly established right has been violated. *Wood v. Moss*, 572 U.S. 744, 757, 134 S. Ct. 2056, 2067, 188 L. Ed. 2d 1039 (2014), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Even if Harris had otherwise pleaded a viable claim that one or more Defendants violated his constitutional rights by failing to intervene in Rentz's use of force, or to report that use of force after the fact, qualified immunity would bar his claims. The authority discussed in the two foregoing subsections strongly suggests that no constitutional violation occurred at all under the facts in the Complaint. With respect to Harris's claim for failure to intervene, no court that can clearly establish the law for the purposes of this case has held that a bystander officer's inaction during a four-second use of force can give rise to a claim for failure to intervene.[3] Indeed, as the Sixth Circuit found after surveying the law across multiple circuits, the federal courts have uniformly "been unwilling to

---

[3] *See Vinyard v. Wilson*, 311 F.3d 1340, 1352 n. 22 (11th Cir. 2002) ("[w]hen case law is needed to 'clearly establish' the law applicable to the pertinent circumstances, we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state.").

impose a duty to intervene where [] an entire incident unfolds in a matter of seconds." *Ontha v. Rutherford Cnty., Tennessee*, 222 F. App'x 498, 506 (6th Cir. 2007).[4] Given the lack of any Eleventh Circuit or Supreme Court authority indicating that Defendants' inaction was unlawful, and the abundance of persuasive authority finding no liability under similar circumstances, qualified immunity bars Harris's claim for failure to intervene.

Likewise, not only is there no controlling authority establishing that an officer who observes an unlawful use of force against an inmate violates the inmate's rights by failing to make an after-the-fact report – the most recent authority on this subject is a case from a sister district court holding that rights of the inmate are not violated under such circumstances. *Riley v. Billy,* No. CV 21-00203-JB-B, 2021 WL 4851891, at *4 (S.D. Ala. July 15, 2021), report and recommendation adopted, No. CV 21-00203-JB-B, 2021 WL 4847433 (S.D. Ala. Oct. 18, 2021). No authority issued between that October 2021 decision, and the January 2022 incident in this case, served to clearly establish the law in the opposite direction. Harris's claim for failure to report the strangulation incident, to the extent he is attempting to plead one, is barred by qualified immunity.

---

[4] "While it is true that only binding precedent can clearly establish a right for qualified immunity purposes, non-binding persuasive authority can be used to indicate that a particular constitutional right is *not* clearly established." *Corbitt v. Vickers*, 929 F.3d 1304, 1319 n. 14 (11th Cir. 2019) (citation and punctuation omitted, emphasis supplied).

## II. *Plaintiff's claim under Georgia law for intentional infliction of emotional distress fails.*

### A. *The alleged conduct was not intentional or reckless, and was not extreme or outrageous.*

To state a claim for intentional infliction of emotional distress under Georgia law, a plaintiff must show (1) that the defendant engaged in conduct that was intentional or reckless; (2) that the conduct was extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) that the emotional distress was severe. *Turnage v. Kasper*, 307 Ga. App. 172, 183 (2010). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Johnson v. Allen*, 272 Ga. App. 861, 865, 613 S.E.2d 657, 661 (2005). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." *Taylor v. Gelfand*, 233 Ga.App. 835, 837(3), 505 S.E.2d 222 (1998) (citation and punctuation omitted). Where a claim for intentional infliction of emotional distress is premised on conduct that is also the subject of a claim under 42 U.S.C. § 1983, failure to state a claim for the constitutional violation is fatal to the claim for intentional infliction of emotional distress. *See Draper v. Reynolds,* 278 Ga. App. 401, 403, 629 S.E.2d 476, 478 (2006) (noting that plaintiff's state-law claims arising from arrest, including claim for intentional infliction of emotional distress, were precluded by earlier federal ruling that defendants did not violate plaintiff's Fourth Amendment rights during same arrest).

Harris cannot meet *any* element of a claim for intentional infliction of emotional distress with respect to these Defendants' alleged actions on January 29, 2022, because there is no wrongful conduct alleged upon which a claim of intentional infliction of emotional distress could be based. Defendants are alleged to have been present during a four-second use of force – an allegation which, as explained above, is insufficient to state a claim for a constitutional violation under 42 U.S.C. §1983. Because the Complaint fails to adequately allege that the conduct underlying Harris's claim for intentional infliction of emotional distress was wrongful, the emotional distress claim necessarily fails. *Draper*, 278 Ga. App. at 403.

Moreover, even if Harris's claim for intentional infliction of emotional distress did not automatically fail alongside his claim under 42 U.S.C. §1983, he would be unable to show either that Defendants' alleged conduct was "intentional or reckless," or that it was "extreme and outrageous."[5] As explained in the foregoing discussion of Harris's federal claim, courts have recognized that jailers do not have sufficient time during a four-second use of force to "both perceive what [is] going on and intercede to stop it." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013). Defendants' alleged inaction cannot be said to have been

---

[5] Defendants do not concede that Harris has pleaded a causal connection between wrongful conduct and emotional distress, as no actionable wrongful conduct has been alleged. They also do not concede that Harris has pleaded severe emotional distress, or that the Defendants' alleged inaction was "directed at" Harris. However, because of the multiple other fatal problems with Harris's emotional-distress claim, Defendants will not belabor these additional issues.

"intentional or reckless" when they did not, as a matter of law, have time to analyze and make a reasoned response to the situation.

Similarly, inaction during an incident that lasted for a period of time that courts have held is insufficient to allow deliberation and intentional action cannot possibly rise to the level of "extreme and outrageous." Indeed, the Georgia Court of Appeals has held that even direct, intentional, wrongful contact between a plaintiff and defendant may not rise to this level when its duration is very brief. *See Metro. Atlanta Rapid Transit Auth. v. Mosley*, 280 Ga. App. 486, 491, 634 S.E.2d 466, 470 (2006) (holding that plaintiff did not meet "extreme and outrageous" element of IIED claim where she alleged that defendant, who was her work supervisor, pulled her against his body and groped her, because "it was an isolated instance that lasted *two seconds*...") (emphasis in original). Harris's allegation that Defendants did not act, during an incident where they had a total of four seconds to perceive the situation, evaluate it, and take any desired action, "does not approach the degree of reprehensibility required to establish" intentional infliction of emotional distress, and the claim fails for this additional reason. *Id.*

      B.      *Defendant are entitled to official immunity.*

Official immunity generally provides county and state officers with immunity from certain state claims that may be brought against them. Ga. Const., Article I, § 2, ¶IX. More particularly, if a claim arises out of the official's performance of a discretionary (as opposed to ministerial) function, then the official is immune from suit unless the plaintiff can show that the official performed the discretionary act with malice or an intent to injure. *Gilbert*

*v. Richardson*, 264 Ga. 744, 753 (1994). Harris does not allege that Defendants negligently performed a ministerial function, and he is thus required to show that Defendants acted with actual malice in order to overcome official immunity.

To sufficiently prove actual malice, a plaintiff must produce direct evidence of "express malice or malice in fact," which in turn requires evidence of "a deliberate intention to do wrong." *Merrow v. Hawkins*, 266 Ga. 390, 391 (1996). "[M]ere unreasonable conduct is insufficient to prevent the application of official immunity." *Hensley v. Langford*, No. 4:19-CV-267-TWT, 2022 WL 3718506, at *5 (N.D. Ga. Aug. 29, 2022). Thus, even conduct that *does* rise to the level of a constitutional violation is not necessarily the type of "extreme and outrageous" conduct that will support a claim for intentional infliction of emotional distress. *Id.* Underlying wrongful conduct – here, the alleged failure to intervene – is necessary, but is far from sufficient, to establish actual malice.

Because Harris has failed to state a claim under 42 U.S.C. §1983, and thus has failed to plead that Defendants' underlying conduct toward him was wrongful, he cannot pierce Defendants' official immunity. Even if Harris *had* pleaded unlawful conduct on the part of Defendants, however, his Complaint is devoid of any factual allegations that could support a finding that any Defendant harbored actual malice toward him. There is no allegation that any Defendant interacted with Harris either on or before the day in question other than to secure him in a restraint chair, and certainly no allegation that any Defendant interacted with Harris in a manner that indicated an deliberate intent to cause him harm.

In fact, the only actions and speech by a jailer described in the relevant portion of the Complaint are those of non-party officer Rentz. Dkt. 1, ¶¶ 12-14.

There are also no allegations from which actual malice could potentially be inferred. And at any rate, overcoming official immunity with circumstantial rather than direct evidence is an extremely difficult – if not essentially impossible – task. Consider, in this regard, *Selvy v. Morrison*, 292 Ga. App. 702 (2008). There, after arresting the plaintiff's fiancé, officers yelled, "Fuck this shit, arrest that bitch too!" *Id.* One of the officers then "twisted her arm behind her back and slammed her face into the wall." *Id.* at 703. Then, while the plaintiff's ten-year-old son was hanging onto her leg screaming, "Don't hurt my momma," one of the officers kicked her legs out from under her and, in the process, kicked the child in the mouth. *Id.* As the child was bleeding, one of the officers then told the plaintiff, "look what you did to your kid, you stupid bitch." *Id.* The police eventually charged the plaintiff for nothing more than engaging in disorderly conduct in violation of a city ordinance.

Despite the taunts, obscenities, and violence experienced by the *Selvy* plaintiff, the Georgia Court of Appeals affirmed the grant of summary judgment to the defendants on the ground that they were entitled to official immunity. In so doing, the court acknowledged that the evidence showed "poor judgment, rude behavior, and reckless disregard for the rights and safety of others on the part of the officers." 292 Ga. App. 702, 705. But, said the court, "'[E]vidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity,' nor is proof of ill will, unless

the ill will is 'combined with the intent to do something wrongful or illegal.'" *Id*. at 706 (quoting *Adams v. Hazelwood*, 271 Ga. 414 (1999)).

If the actions of the officers in *Selvy* were insufficient to overcome official immunity, then the same is surely true here. Defendants, unlike the officers in *Selvy*, are not alleged to have taunted Harris or to have referred to him with epithets. Instead, as noted above, they are not alleged to have had any interaction with him whatsoever other than placing him in a restraint chair. There is nothing in the Complaint to even suggest that any Defendant harbored any ill will toward Harris. Further, even evidence of ill will would be insufficient in the absence of a deliberate intent to do something wrong or illegal, and Harris has not offered any more than conclusory allegations that Defendants intended to act unlawfully. Harris's state-law claim, to the extent it is premised on the January 29, 2022 incident, is barred by official immunity.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court dismiss all claims asserted against them in Plaintiff's Complaint other than the claims for failure to intervene in the alleged use of a shock shield.

This seventeenth day of June, 2024.

/s/ Richard K. Strickland
Richard K. Strickland
Georgia Bar No. 687830
rstrickland@brbcsw.com

-16-

/s/ Emily R. Hancock
Emily R. Hancock
Georgia Bar No. 115145
ehancock@brbcsw.com

BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 FAX

**ATTORNEYS FOR DEFENDANTS**